IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

HOPE M.,

      **Plaintiff,**

v.                                                                                  Case No. 4:24cv136

FRANK BISIGNANO[1],
**Commissioner of Social Security,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Hope M. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Frank Bisignano, the Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for supplemental security income ("SSI") under the Social Security Act. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 7.

Presently before the Court is Plaintiff's brief in support of reversal and remand of the Commissioner's decision denying benefits, ECF Nos. 11–12,[2] and the Commissioner's brief in

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Frank Bisignano for former Acting Commissioner of Social Security Carolyn Colvin in this matter.

[2] Following the implementation of the new Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g), the parties are no longer required to file dispositive motions, and instead file a brief for the requested relief. Accordingly, the Court will treat Plaintiff's "Motion for Summary Judgment" as a brief for the requested relief.

support of the Commissioner's decision denying benefits, ECF No. 14. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

Plaintiff previously applied for social security benefits and was denied on October 2, 2018. R. at 55–69. She subsequently filed a protective application for SSI on November 9, 2021, alleging disability due to diabetes, epilepsy, peripheral neuropathy, restless leg syndrome, gastroesophageal reflux disease, high cholesterol, hip osteoarthritis, and depression. R. at 75, 199.[3] Plaintiff's application was initially denied on August 26, 2022, and again denied upon reconsideration on April 25, 2023. R. at 85–86. Plaintiff requested a hearing before an administrative law judge. R. at 137.

A hearing was held on January 17, 2024, at which Plaintiff appeared with counsel before Administrative Law Judge Jeffrey Jordan ("the ALJ"). R. at 32–51. Both Plaintiff and an impartial vocational expert testified at the hearing. R. at 38–51. On April 2, 2024, the ALJ issued a decision finding Plaintiff not disabled. R. at 14–26. Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on September 12, 2024, making the ALJ's decision the final decision of the Commissioner. R. at 1–3.

Having exhausted her administrative remedies, on November 15, 2024, Plaintiff filed a Complaint for judicial review of the Commissioner's decision. ECF No. 1. In accordance with the Supplemental Rules for Social Security Actions, on March 7, 2025, Plaintiff filed a brief in

---

[3] "R." refers to the certified administrative record that was filed under seal on January 8, 2025, ECF No. 6, pursuant to Eastern District of Virginia Local Civil Rules 5(B) and 7(C)(1).

2

support of reversal and remand of the Commissioner's decision. ECF Nos. 11–12. On April 8, 2025, the Commissioner filed a brief in support of the Commissioner's decision denying benefits. ECF No. 14. Plaintiff filed a reply brief on April 22, 2025. ECF No. 15. Because the matter is fully briefed, it is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

The Record included the following factual background for the ALJ to review:

Plaintiff was forty-eight years old at the time of her alleged disability onset date of July 1, 2021. R. at 75. Plaintiff last worked as a cashier at Dollar Tree. R. at 38. She lives with her sister, and in the past, lived with her daughter. R. at 274. Plaintiff's sister helps her cook, do laundry, remember her medication, and grocery shop. R. at 44–45.

### A. Plaintiff's Medical Records Relevant to Alleged Mental Impairments[4]

In a function report dated July 6, 2022, Plaintiff detailed her impairments and symptoms. R. at 274–81. She explained that her hip causes her a great amount of pain, and the medication she takes causes unpleasant side effects such as drowsiness and dizziness. R. at 274–75, 281. She noted her ability to cook simple meals with help from family members. R. at 276–77. Plaintiff reported that she is depressed, does not do much, and is always in pain. R. at 278.

During the relevant period, Plaintiff received little medical treatment related to her mental impairments. Plaintiff attended outpatient psychiatry on two occasions. On July 8, 2022, Plaintiff presented for an initial psychiatric evaluation. R. at 529. Plaintiff explained that she was having a "rough time" due to her father's health issues and her daughter living at Plaintiff's home. R. at 530. She reported she stopped working to take care of her father, and because of her hip pain. R. at 530. Plaintiff stated she had problems getting accommodations at work and that she was making

---

[4] Because Plaintiff's physical impairments are not at issue, the Court does not address Plaintiff's medical records relating to her physical impairments.

3

mistakes due to her medications and complicated medical issues. R. at 530. She was stressed due to her medical issues, including diabetes and hip pain. R. at 530. Her affect was depressed, anxious, and somewhat irritable, but her attention was intact, and her concentration and insight were fair. R. at 535. Plaintiff's provider noted a diagnostic impression of "mood disorder" but deferred prescribing antidepressants due to an unclear mood. R. at 536. Plaintiff attended a follow-up psychiatry appointment on July 27, 2022. R. at 634. She reported an overall improvement in her mood, attributed to her daughter moving out. R. at 634. Plaintiff's mood, attention, concentration, and insight remained the same. R. at 638.

Plaintiff regularly received treatment for diabetes, seizures, and hip pain. *See e.g.*, R. at 355, 514, 603, 643–44. Generally, at her appointments with other providers, Plaintiff presented normal behavior, judgment, and mood. *See e.g.*, R. at 359, 375, 528, 542, 550, 649, 678, 681, 828, 839, 848, 858, 884, 921, 938.

### B. Relevant Mental Evaluations Completed by State Agency Examiners

At the initial level of review, state agency examiner Richard Milan, Ph.D ("Dr. Milan") reviewed Plaintiff's record. R. at 76–83. He determined Plaintiff had a mild limitation in her ability to interact with others, and moderate limitations in her abilities to: understand, remember, or apply information; concentrate, persist, or maintain pace; and adapt or manage oneself. R. at 78. In evaluating Plaintiff's ability to adapt or manage oneself, Dr. Milan further opined that Plaintiff was "moderately limited" in her ability to respond appropriately to changes in the work setting due to her history of depression/mood disorder and reported interruptions in concentration and difficulty coping with stressors. R. at 82. Dr. Milan suggested Plaintiff "would need assistance in adapting to change, unless infrequent or implemented gradually." R. at 82.

At the reconsideration level of review, state agency examiner Joseph Leizer Ph.D ("Dr. Leizer") agreed with Dr. Milan that Plaintiff had a mild limitation in her ability to interact with others, and moderate limitations in her abilities to: understand, remember, or apply information; and concentrate, persist, or maintain pace. R. at 90. But Dr. Leizer disagreed with Dr. Milan on Plaintiff's ability to adapt or manage oneself, finding that she had no limitation. R. at 90. He explained that "[t]here are no restrictions in the claimant's abilities in regards to adaptation." R. at 95.

### C. Plaintiff's Testimony at ALJ Hearing

At the ALJ hearing, Plaintiff testified about her last job at Dollar Tree. R. at 38–40. She stopped working at Dollar Tree because her pain made it difficult to keep up with work, and her medication prevented her from performing the job properly. R. at 39. She often has difficulty getting out of bed. R. at 42. Plaintiff uses a cane and a walker to get around in her house and in public. R. at 43.

### III. THE ALJ'S DECISION

To determine if the claimant is eligible for benefits, the ALJ conducts a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (summarizing the five-step sequential evaluation). At step one, the ALJ considers whether the claimant has worked since the alleged onset date, and if so, whether that work constitutes substantial gainful activity. § 416.920(a)(4)(i). At step two, the ALJ considers whether the claimant has a severe physical or mental impairment that meets the duration requirement. § 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. § 416.920(a)(4)(iii). If the claimant does not have an impairment that meets or equals

the severity of a listed impairment, the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant can do despite her impairments. § 416.945(a). At step four, the ALJ considers whether the claimant can still perform past relevant work given his or her residual functional capacity. § 416.920(a)(4)(iv). Finally, at step five, the ALJ considers whether the claimant can perform other work. § 416.920(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial gainful activity at step one; they do not have any severe impairments at step two; or if the claimant can perform past relevant work at step four. *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014). The ALJ will determine the claimant is disabled if the claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five. *Id.*; *see also Mascio*, 780 F.3d at 634–35 (noting the ALJ will only determine the claimant's residual functional capacity if the first three steps do not determine disability).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 9, 2021, the application protective filing date. R. at 17. At step two, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis, depression, and diabetes mellitus. R. at 17. At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. at 18–19.

After step three, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations:

> [Plaintiff] cannot climb ladders, ropes, or scaffolds but can perform other postural movements occasionally. [She] cannot work around hazards, such as unprotected heights or dangerous or moving machinery. [She] is limited to simple routine tasks that are not fast paced such as assembly line jobs involving production quotas. [She] is limited to occasional interaction with the public, co-workers and supervisors.

R. at 19. In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and SSR 16-3p." R. at 20.

At step four, the ALJ determined that Plaintiff had no past relevant work. R. at 24. At step five, the ALJ determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy, including the representative occupations of marker, routing clerk, cleaner. R. at 25. Thus, the ALJ determined that Plaintiff has not been disabled since November 9, 2021, the date her application was protectively filed.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Britt v. Saul*, 860 F. App'x 256, 260 (4th Cir. 2021) (quoting *Craig*, 76 F.3d at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

7

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff's appeal to this Court raises a single challenge to the ALJ's decision: that the ALJ erred in formulating Plaintiff's RFC without accounting for adaptation limitations. ECF No. 12 at 8. Plaintiff alleges that because the ALJ found a mild limitation in adapting or managing oneself at step two and determined that Dr. Milan's opinion was persuasive, the ALJ should have included adaptation limitations in Plaintiff's RFC or explained why no such limitations were necessary. *Id.* at 8–16. In response, the Commissioner argues that the ALJ clearly articulated what evidence he relied on in forming Plaintiff's RFC, and included a sufficient explanation why he found Dr. Leizer's assessment more persuasive than Dr. Milan's assessment to warrant no adaptation limitations in Plaintiff's RFC. ECF No. 14 at 10–18.

After step three of the sequential analysis, the ALJ must determine the claimant's RFC. § 416.920(a)(4). RFC is defined as "the most" a claimant "can still do despite [his or her] limitations." § 416.945(a)(1). In making the RFC determination, the ALJ must consider "all the relevant medical and other evidence" in the record and incorporate any impairments supported by objective medical evidence, and those impairments based on the claimant's credible complaints.

8

§ 416.945(a)(3); *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996)). In determining the claimant's RFC, the ALJ must "identify the individual's functional limitations" and then assess the individuals "work-related abilities on a function-by-function basis," including the claimant's physical abilities, mental abilities, and any other work-related abilities affected by his or her impairments. *Mascio*, 780 F.3d at 636. The ALJ must include a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*

If an ALJ determines that a claimant has moderate limitation in an area of mental functioning at step three of the sequential evaluation process,[5] the ALJ must account for that limitation in an RFC determination or offer a specific explanation why no corresponding RFC limitations are required. *Mascio*, 780 F.3d at 638. However, if an ALJ determines that a claimant has only a mild limitation in an area of mental functioning, there is no specific requirement for the ALJ to account for or explain that limitation. *See Kimberly G. v. Comm'r of Soc. Sec.*, No. 2:21-

---

[5] At step three, if a claim is based in whole or in part on mental health impairments, an ALJ must evaluate "an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings." SSR 96-8p, 1996 WL 374184; *see also* § 416.920(a)(4)(iii). Paragraph B "provides the functional criteria . . . to evaluate how [a plaintiff's] mental disorder limits [his or her] functioning." 20 C.F.R. Part 404 Subpt P, App. 1 § 12.00(A)(2)(b). The four areas of mental functioning are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.*, § 12.00(E). The ALJ evaluates the effects of a mental disorder on each of the four areas of mental functioning using a five-point rating scale, consisting of: none, mild, moderate, marked, and extreme limitation. *Id.*, § 12.00(F)(2). A mild limitation occurs when the claimant's functioning in an area is "independently, appropriately, effectively, and on a sustained basis is slightly limited." *Id.* A moderate limitation occurs when the claimant's functioning in an area is "independently, appropriately, effectively, and on a sustained basis is fair." *Id.*

Plaintiff argues that the determination that she had mild limitations in adapting or managing oneself was made at step two of the sequential evaluation process. *See* ECF No. 12. However, that determination is made at step three of the process to consider whether Plaintiff meets or medically equals the criteria of a listed impairment and evaluate the paragraph B criteria. *See* § 416.920(a)(4)(iii); SSR 96-8p, 1996 WL 374184.

cv-45, 2021 WL 8086729, at *10 (E.D. Va. Dec. 7, 2021), *report and recommendation adopted*, No. 2:21-cv-45, 2022 WL 882165 (E.D. Va. Mar. 24, 2022) ("ALJs are not required to explain or incorporate functional limitations with de minimis effect in RFCs."); *Michael E. v. Bisignano*, No. 2:24cv568, 2025 WL 3500616, at *3 (E.D. Va. Sept. 12, 2025) (finding there is no authority for the proposition that mild limitations must be accounted for or explained away in an RFC analysis). This is because mild limitations often "do not significantly limit [a plaintiff's] ability to work." *See Kimberly G.*, 2021 WL 8086729, at *10.

Nor does an ALJ have any obligation to adopt limitations suggested in a medical opinion, even if he finds the opinion generally persuasive. *See Turner v. Comm'r of Soc. Sec.*, No. 23-1760, 2024 WL 2764722, at *5 (4th Cir. May 30, 2024). Ultimately, the ALJ, not a medical provider, has the "final responsibility" for determining a claimant's residual functional capacity. *Jeffrey R. T. v. Saul*, No. 3:19cv752, 2021 WL 1014048, at *10 (E.D. Va. Feb. 25, 2021), *report and recommendation adopted*, No. 3:19cv752, 2021 WL 982631 (E.D. Va. Mar. 16, 2021) (citing §§ 404.1527(d)(2), 416.927(d)(2)).

At step three, the ALJ evaluated the paragraph B criteria for adapting and managing oneself, and found that Plaintiff has a mild limitation. R. at 19. The ALJ explained:

> [t]he claimant is noted to have been a caretaker for her father and is noted to have been able to carpet clean and pursue medical treatment. The claimant indicated working part-time as a cashier and was unable to continue due to physical and not mental impairments. While the claimant is noted to have depression, she receives minimal and conservative treatment with most symptoms presenting in the setting of situational stressors.

R. at 19 (internal citations omitted). The ALJ then determined Plaintiff's RFC, which included no specific limitations relating to adapting and managing oneself. To support the RFC analysis, the ALJ provided a comprehensive review of the record, including Plaintiff's testimony at the hearing, her mental health treatment records, the prior ALJ decision, and the medical opinions in the record.

R. at 22–24. In evaluating the medical opinions in the record, the ALJ analyzed the state agency examiner's opinions at both the initial level from Dr. Milan, and the reconsideration level, from Dr. Leizer. R. at 23–24. The ALJ explained that at the initial level of review, Dr. Milan found that Plaintiff had a "moderate limitation in all functional 'B' criteria except a mild limitation in interacting with others." R. at 23. However, upon reconsideration, the ALJ noted that Dr. Leizer found Plaintiff had a "moderate limitation in understanding and concentration and mild limitation in all other areas."[6] R. at 24. The ALJ found Dr. Leizer's reconsideration opinion "more persuasive because while both opinions were supported at the time they were rendered, the reconsideration opinion had more access to updated evidence which supports that the claimant would have . . . only moderate limitation in understanding and concentration." R. at 24.

Plaintiff's argument is unavailing for several reasons. At the outset, the ALJ here did not have any specific obligation to account for or explain away mild limitations in mental functioning. *See Kimberly G.*, 2021 WL 8086729, at *10 ("ALJs are not required to explain or incorporate functional limitations with de minimis effect in RFCs."); *Michael E.*, 2025 WL 3500616, at *3 (finding there is no authority for the proposition that mild limitations must be accounted for or explained away in an RFC analysis). Similarly, the ALJ did not have any obligation to adopt limitations suggested in a medical opinion, even if he finds the opinion generally persuasive.[7] *See Turner*, 2024 WL 2764722, at *5. Rather, the ALJ's only obligation was to sufficiently explain Plaintiff's RFC, accounting for "all the relevant medical and other evidence" in the record and incorporate any impairments supported by objective medical evidence, and those impairments

---

[6] While the ALJ stated that Dr. Leizer found Plaintiff had a mild limitation in "all other areas," presumably including the ability to adapt or manage oneself, the record demonstrates that Dr. Leizer actually found Plaintiff had *no limitation* in this area. R. at 90, 93.

[7] But as explained below, here, the ALJ did not even find Dr. Milan's opinion persuasive. *See infra*, n.8. He found it less persuasive than Dr. Leizer's opinion. *Id.*

11

based on the claimant's credible complaints. § 416.945(a)(3); *Mascio*, 780 F.3d at 635 (citing SSR 96-8p, 1996 WL 374184).

The ALJ did so. Here, the ALJ provided a comprehensive RFC analysis that considered all the relevant evidence in the record. First, the ALJ determined that Plaintiff had a mild limitation in adapting and managing oneself—a finding that Plaintiff does not dispute. *See* R. at 19. In finding a mild limitation, the ALJ explained the types of activities Plaintiff can still do despite her mild limitation, including taking care of her father, and pursuing medical treatment. R. at 19. The ALJ found that her inability to work part-time as a cashier was largely due to her physical impairments, rather than mental impairments. R. at 19. Finally, he noted her minimal and conservative depression treatment, and that her symptoms largely only present with situational stressors. Second, the ALJ reviewed Plaintiff's testimony about her impairments, including that she stopped working due to dizziness and fatigue, and that she cannot get out of bed some days due to her pain. R. at 20.

Third, the ALJ considered the record evidence about Plaintiff's mental health treatment, reiterating that Plaintiff has received minimal and conservative treatment. R. at 22. He noted that Plaintiff had an "improved mood" in July 2022, related to her daughter moving out of the home. R. at 23. She denied suicidal ideation or delusions, mania, or psychosis. R. at 23. The ALJ explained that while Plaintiff has "depressive symptoms at times, [] this appears to coincide with situational stressors such as her daughter living with her and having to play caregiver to her ailing father." R. at 23. The ALJ determined that due to her moderate limitations in concentration, persistence, and pace, it was appropriate to include a RFC limitation to simple routine tasks that are not fast paced such as assembly line jobs involving production quotas with occasional interaction with others. R. at 23.

Lastly, the ALJ reviewed the medical opinions in the record. R. at 23–24. He explained that the reconsideration opinion from Dr. Leizer—which did not suggest any adaptation limitations—was more persuasive than Dr. Milan's opinion.[8] The ALJ explained that Dr. Leizer's opinion was supported, and Dr. Leizer had access to updated evidence demonstrating Plaintiff had a moderate limitations in understanding and concentration. R. at 24. Reading the ALJ's decision as a whole, his RFC determination is supported by substantial evidence and supports the ALJ's determination not to include any adaptation limitations in Plaintiff's RFC.

Ultimately, the ALJ was not required to adopt any specific limitations related to Plaintiff's mild limitation in adapting or managing oneself or explain why none were necessary. Nor was the ALJ required to adopt Dr. Milan's suggestion that Plaintiff be limited to work in an environment with only occasional changes implemented in a gradual manner—especially after finding it was less persuasive than Dr. Leizer's opinion. The ALJ's evaluation of the evidence accomplished the required RFC analysis and it provides substantial evidence for the ALJ's decision not to include adaptation limitations. Here, the ALJ "buil[t] an accurate and logical bridge from the evidence to [the ALJ's] decision" that allows this Court to evaluate the ALJ's decision. *Monroe*, 826 F.3d at 189.

## VI. <u>RECOMMENDATION</u>

Because substantial evidence supports the Commissioner's decision and the correct legal standard was applied, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

---

[8] While Plaintiff alleges that the ALJ found Dr. Milan's opinion "persuasive," the record does not support that allegation. ECF No. 12 at 12–14. The ALJ did not state that he found Dr. Milan's opinion or suggested limitation persuasive. *See* R. at 23–24. Rather, the ALJ simply stated that the reconsideration opinion from Dr. Leizer was *more persuasive*, because Dr. Leizer had access to updated evidence. *See* R. at 23–24. But, with respect to Dr. Milan, the ALJ only found that his opinion was supported at the time it was rendered, and less persuasive than Dr. Leizer's opinion. R. at 24.

13

## VII. <u>REVIEW PROCEDURE</u>

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

/s/ Lawrence R. Leonard<br>
Lawrence R. Leonard<br>
United States Magistrate Judge

Newport News, Virginia
January 7, 2026